IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID WILLIAMS,

    Plaintiff,                    15cv0402
                                            **ELECTRONICALLY FILED**

       v.

CITY OF PITTSBURGH, ET AL.,

    Defendants.

**MEMORANDUM OPINION**

This is a civil rights lawsuit. Plaintiff sued the Defendants for violations of his Fourth and Fourteenth Amendment rights, specifically, his right to be free from: unreasonable searches and seizures, the use of excessive and unreasonable force, and false and malicious prosecution. During the pendency of this matter, the parties stipulated to the dismissal of several Defendants. The only remaining Defendants are Officer Eric Baker, Officer Nathan Auvil, Officer Brendan Nee, and Sergeant Stephen Matakovitch.

Before the Court is the Defendants' Motion for Summary Judgment and Brief in Support. Doc. nos. 46, 47. Plaintiff has filed a Brief in Opposition to the Defendants' Motion for Summary Judgment. Doc. no. 53. Defendants filed a Reply Brief (doc. no. 57) and Plaintiff filed a Sur-Reply with the Court's permission. Doc. no. 63. The matter is now ripe for adjudication.

**I. Standard of Review**

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material," if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004), quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001), quoting Celotex, 477 U.S. 317, 325 (1986).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible

evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), citing *Anderson*, 477 U.S. at 255.

## II. Procedural and Factual History

The following material facts are not in dispute, unless otherwise indicated.

Plaintiff filed a Complaint against the City of Pittsburgh, as well as several law enforcement officers: Defendants Baker, Nee, Auvil, and Matakovich. See Doc. no. 1. Plaintiff filed an Amended Complaint on August 31, 2015. Doc. no. 29. The Amended Complaint asserted that all Defendants violated Plaintiff's civil rights under the Fourth and Fourteenth Amendments. Id. The individual Defendants filed cross-claims against the City of Pittsburgh (doc. no. 32), but ultimately, Plaintiff and the individual Defendants agreed to voluntarily dismiss the City of Pittsburgh, as well as Defendant Nathan Harper and the "John Doe" Defendants. The Court issued Orders granting the dismissals of these Defendants. See doc. nos. 16, 43.

Plaintiff's civil rights violation claims in this case against the remaining Defendants stem from a physical altercation which took place on September 1, 2014, between Plaintiff (a state trooper) and Defendants (City of Pittsburgh police officers). Doc. no. 29, ¶ 14; doc. no. 48, ¶ 1; doc no. 54, ¶ 1. On the night of September 1, 2014, Plaintiff attended his brother's wedding reception on a Gateway Clipper riverboat. Id. Following the reception, Plaintiff retired (with

3

his wife and children) to his hotel room located in Station Square. Doc. no. 29, ¶ 15; doc no. 48, ¶ 2; doc no. 54, ¶ 2.

Sometime thereafter, Plaintiff's brother, the groom, and/or a groomsman got into a physical altercation with a third party – not the Defendants. Doc. no. 29, ¶ 16; doc no. 48, ¶ 2-4; doc no. 54, ¶ 2-4. The City of Pittsburgh police arrived at the scene of the altercation. Doc. no. 29, ¶ 17; doc no. 48, ¶ 5; doc no. 54, ¶ 5.

Upon learning that the groom was either injured or involved in an altercation, Plaintiff left his hotel room and found the groom and groomsman (along with several Pittsburgh police officers) in a parking lot. Doc. no. 29, ¶ 16-17; doc no. 48, ¶ 6; doc. no. 55, ¶ 5-6, 8.

As Plaintiff approached the area where the groom and groomsman were located, physical contact between Plaintiff and the groomsman occurred, and at least one of the individual Defendants immediately and physically intervened. Doc. no. 29, ¶ 20; doc no. 48, ¶ 9; doc no. 55, ¶ 16. After one or more Defendants and Plaintiff physically engaged one another, Plaintiff was arrested, was transported to and housed in the Allegheny County Jail for a period of time, and ultimately was charged with several crimes – some of which were felonies. Doc. no. 29, ¶ 20-28, 30-31; doc. no. 48, ¶ 9-17; doc. no. 55, ¶16-35, 43. This incident was reported by the news media.

Upon his arrest, Plaintiff was suspended without pay from his job as a state trooper but he received back pay for the time he was suspended until the preliminary hearing. Doc. no. 29, ¶ 36; doc no. 48, ¶ 19, doc no. 54, ¶ 19, doc no. 55 ¶ 65. Plaintiff's promotion to detective was placed "on hold" but he was granted the promotion following the completion of the state police's own internal investigation of this incident. Doc. no. 29, ¶ 37; doc no. 48, ¶ 19, doc no.

54, ¶ 19. All of the charges against Plaintiff were withdrawn at his September 11, 2014 preliminary hearing. Doc. no. 29, ¶ 40; doc no. 48, ¶ 20, doc. no. 54, ¶ 20.

**III. Analysis**

The claims raised by Plaintiff in his Amended Complaint allege that Defendants violated his civil rights when they used excessive force to falsely arrest him and then maliciously prosecute him. Defendants dispute that excessive force was used, that a false arrest occurred, and that a malicious prosecution ensued.

Both parties heavily rely on a video of the actual altercation among the groomsman, Defendants, and Plaintiff which occurred in a parking lot on the night in question. Plaintiff has his interpretation of those events which are depicted on the videotape (see doc. no. 55), and Defendants, unsurprisingly, have a different interpretation of the same depiction. The video recording of the altercation does not contain an audio recording.

In a nutshell, Plaintiff asserts that the force used against him was excessive given the circumstances, as illustrated by the video. This alleged excessive force, coupled with the fact that television news teams arrived on the scene during or shortly after the use of the alleged excessive force, led the Defendants to falsely arrest Plaintiff, and later to allegedly fabricate portions of their reports about the night's events. The allegedly fabricated charges purportedly caused Plaintiff to be maliciously prosecuted – for a period of time. Plaintiff concedes that the charges against him were eventually dropped at his preliminary hearing, but disputes why those charges were withdrawn by Defendants. Thus, many, if not all, of Plaintiff's claims directly flow from how a fact-finder interprets the events as they occur on the video of the actual altercation.

Defendants, conversely, claim that the video illustrates that no "excessive" force was used against Plaintiff. Defendants also claim that the charges were properly brought and were dismissed as a "courtesy," presumably because Plaintiff was and is a state trooper and/or because of the facts surrounding the entire incident.

The Court has viewed the silent video recording of the altercation and finds that the parties' different descriptions of what is actually transpiring on that video among the groomsman, Plaintiff, and Defendants is a question of fact which a jury must answer. If a jury finds that Plaintiff's version of what is transpiring on the video is true, Plaintiff is likely to meet his burden of proving all of his claims. Conversely, if Defendants convince the jury that their version of what is occurring on the video is true, they are likely to succeed in defeating all of Plaintiff's claims.

**IV. Conclusion**

Because it is the fact finder who must determine what transpired in the parking lot on the night in question, material issues of fact exist, and thus the Court is constrained to deny the Motion for Summary Judgment. An appropriate Order will follow.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge
