IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID WILLIAMS,

      Plaintiff,               15cv0402
                               **ELECTRONICALLY FILED**

      v.

OFFICER ERIC BAKER, OFFICER
BRENDAN NEE, OFFICER NATHAN
AUVIL, and STEPHEN MATAKOVICH,

      Defendants.

**MEMORANDUM ORDER OF COURT
ON DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT (DOC. NO. 74)**

      Plaintiff brought this civil rights lawsuit seeking damages for false arrest, false imprisonment, and malicious prosecution. Presently before the Court are eight Motions *in Limine* filed by Defendants (doc. nos. 74, 76, 78, 80, 82, 85, 87, 89), and ten Motions *in Limine* filed by Plaintiff (doc. nos. 92, 93, 94, 95, 96, 97, 98, 99, 100, 101). The Court has chosen to decide the instant Motion to Exclude Plaintiff's Expert (doc. no. 74) separately from the remaining Motions *in Limine*.

      James Lewis has been proffered by Plaintiff as an expert witness. It appears from Defendant's Motion and Brief in Support (doc. nos. 74, 75), Plaintiff's Response in Opposition to the Motion (doc. no. 126), and Mr. Lewis' expert report (doc. no. 75-1), that Mr. Lewis will opine that it is unlikely that Plaintiff will be able to obtain a job as the Chief of Police of a small to mid-size police department because of the incident which took place on September 1, 2014. Mr. Lewis would also opine that Plaintiff's inability to become a Chief of such a department will

cause him to sustain a $1.2 million salary loss. It appears from the parties' submissions that they consider Mr. Lewis' testimony to be a form of non-scientific, vocational expert testimony.

Defendants challenge the admissibility of Mr. Lewis' testimony arguing this testimony should be precluded under F.R.E. 702 because: (1) his testimony is too speculative in nature and lacks any sort of scientific methodology; and (2) he cannot testify to any amount of economic loss Plaintiff would sustain because Mr. Lewis is not an economic expert. Plaintiff has responded to these arguments noting, first, that Defendant does not challenge Mr. Lewis' qualifications; second, countering that Mr. Lewis' testimony is reliable given his personal knowledge and experience relating to the hiring of Police Chiefs; and third, conceding that Mr. Lewis is not being proffered as an economic expert.

The Court finds that the issue(s) raised in this Motion are governed by F.R.E. 702 and 703. These rules of evidence impose "a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), *quoting*, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1999). In *Daubert*, the Supreme Court provided the following guideposts for a court to consider when determining whether a person may testify as a "scientific" expert and offer his or her opinions:

> [A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry. [Quotations and citations omitted.]
>
> Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication.

\* \* \*

>   Additionally, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error . . .
>
> \* \* \*
>
>   Finally, "general acceptance" can yet have a bearing on the inquiry. A reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community. [Quotations and citations omitted.]
>
> \* \* \*
>
>   The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Daubert* at 592-595.

Since *Daubert*, the United States Court of Appeals for the Third Circuit and the Supreme Court have considered how to test the reliability of testimony proffered by "non-scientific" expert witnesses. See, *i.e., Kuhmo Tire Co., Ltd v. Carmichael*, 526 U.S. 137 (1999); *Elcock v. Kmart,* 233 F.3d 734 (3d Cir. 2000).

The Court finds the case of *Elcock* particularly instructive. In *Elcock,* the Court of Appeals for the Third Circuit carefully considered the qualifications of a purported expert (Mr. Copemann), who, like Mr. Lewis, was proffered to testify as a type of vocational expert – which falls into the category of a non-scientific expert. In *Elcock*, the Court of Appeals noted that Mr. Copemann was "marginally qualified" to testify as an expert, and then considered the reliability of his testimony. Given Mr. Copemann's "marginal qualifications," the Court observed that "an expert's 'level of expertise may affect the reliability of the expert's opinion.'" 233 F.3d at 749, *quoting, In re Paoli R.R. Yard PCB Litigation* ("*Paoli II*")*,* 35 F.3d 717, 741 (1994). In *Elcock*, despite the fact that Mr. Copemann was testifying as a non-scientific expert, the Court of Appeals applied the seven *Daubert* "important, non-exclusive" factors to his non-scientific

expert testimony that had been proffered in its case. The application of these factors led the Court of Appeals to vacate the District Court's decision which had admitted Mr. Copemann's expert testimony, and remand the matter for a *Daubert* hearing (which had been repeatedly requested by one of the parties).[1]

Turning to the instant matter, as noted by Plaintiff, Defendants did not contest the qualifications of Mr. Lewis as a type of "vocational expert." However, as noted above, this Court has a gatekeeping obligation which covers not only scientific, but also non-scientific, expert testimony. *See Kumho Tire*, 526 U.S. at 151. As such, this Court must carefully consider whether Mr. Lewis possesses specialized knowledge that will assist the jury and, if so, whether his testimony is based on sufficient facts, and is the product of reliable principles and methods. The Court finds Mr. Lewis' testimony lacking in both regards.

First, Mr. Lewis' methods and principles regarding how to reduce a large applicant pool of potential Police Chief candidates cannot be tested. Mr. Lewis merely provides anecdotal testimony as to how he has historically pared down the number of job applicants who are seeking the position of Chief of Police in small to mid-size police departments.

Second, the gravamen of his testimony suggests that individuals (like him) who may be asked to assist in the search for a Chief of Police would: (1) perform an internet search of every job applicant; and (2) automatically eliminate any applicant based solely on an internet search that produced any negative articles or negative profile of that applicant. Mr. Lewis concludes that because an internet search conducted today (in year 2016) yields allegedly negative publicity

---

[1] The non-exhaustive list factors that *Daubert* and *Elcock* declared important included: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

4

about Plaintiff, by year 2028, when Plaintiff may want to apply for a Chief of Police position, he will be automatically eliminated as a viable candidate for such a position when an internet search produces the same news articles surrounding this incident.

The Court finds that this testimony, due to its completely un-testable methodology and unpredictable 2028 internet search outcome, is too speculative to be admitted under *Daubert, Kuhmo,* or *Elcock.* There is no way of knowing what an internet search conducted in year 2028 will yield in relation to Plaintiff's name, let alone how to test a predicted outcome such as this. Depending on the number and notoriety of cases Plaintiff handles as a police officer between 2016 and 2028, an internet search may produce extremely different results both in terms of quantity of information as well as the tenor or tone of those results. Moreover, there is no way of knowing whether a Chief of Police position will be sought by Plaintiff in 2028, or at some later or earlier date, if ever.

Likewise, there is no way of knowing how much stock, if any, a person reviewing applications for a Chief of Police position will put into an internet search, or if that person would even conduct one. Additionally, even if the purportedly negative articles emanating from the September 1, 2014 incident are derived from an internet search conducted in year 2028, it is pure speculation that a reviewer would accept everything s/he read on the internet as true, and not permit Plaintiff to interview for the job or delve deeper into Plaintiff's actual qualifications. While it may be true that Mr. Lewis would do just that – his method of paring down the pool of job applicants lacks any sort of methodology which can be tested, and thus, cannot be relied upon by a jury.[2]

---

[2] Despite the Court's decision to exclude Mr. Lewis' testimony as an expert, the Court notes that Plaintiff will not be precluded from expressing his own concerns, if any, of what an internet search on his name currently yields. Plaintiff's testimony in this regard will be admitted to support his damage elements,

5

Accordingly, Defendants' Motion *in Limine* will be granted and Mr. Lewis will not be permitted to testify as an expert witness.[3]

                                   SO ORDERED this 31st day of March 2016,

                                   s/ Arthur J. Schwab
                                   Arthur J. Schwab
                                   United States District Judge

cc:    ECF registered counsel of record

---

namely: emotional harm, humiliation, and damage to his reputation. Expert testimony on these damage elements is not required, as lay testimony can suffice and may be of greater assistance to the jury.

[3] In light of the Court's ruling in this regard, Mr. Lewis' expert report may not be entered into evidence.